IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALLSTATE INSURANCE COMPANY,

        Plaintiff,

v.

JEFFREY REGAN ANDREWS,

        Defendant.

Civil Action No. <u>3:22-cv-25-TSL-RPM</u>

**BENCH TRIAL DEMANDED**

<u>**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**</u>

Plaintiff Allstate Insurance Company ("Allstate") alleges as follows in its Verified Complaint for Injunctive and Other Relief against Defendant Jeffrey Regan Andrews ("Andrews" or "Defendant"):

<u>**NATURE OF THIS ACTION**</u>

1.      This Action results from Andrews refusing to comply with his contractual and other legal obligations to Allstate after Allstate terminated his R3001S Exclusive Agency Agreement (the "EA Agreement") for cause following an investigation that revealed Andrews was misappropriating funds of Allstate and its customers.

2.      Andrews executed his EA Agreement effective December 1, 2018.

3.      The EA Agreement allowed Andrews to become an Exclusive Allstate Agent, to receive Allstate confidential information, to sell Allstate insurance products and services, and to receive commissions for the sale of Allstate products and services.

4.      Under the EA Agreement, Andrews was granted access to Allstate confidential information.

5.      Such Allstate confidential information is and was the property of Allstate.

1

6.      Andrews agreed, during and after termination of his EA Agreement, not to use Allstate confidential information for his own benefit or disclose Allstate confidential information to third parties.

7.      Further, upon termination of his EA Agreement, Andrews agreed, among other things, to immediately: (a) desist representing himself as an agent or representative of Allstate; (b) return all company property, including all Allstate confidential information; (c) cease using the Allstate telephone numbers used to conduct Allstate business and cooperate to transfer those phone numbers to Allstate; and (d) discontinue any and all use of Allstate service marks and trade names.

8.      Andrews' EA Agreement was terminated for cause on January 11, 2022.

9.      The termination letter reminded Andrews of his obligations under the EA Agreement, including **_immediately_** stopping the operation of an Allstate agency, returning all Allstate property, ceasing use of the Allstate phone numbers used to conduct Allstate business, and discontinuing any and all use of Allstate service marks and trade names.

10.     Despite his termination, upon information and belief, Andrews continues to operate an Allstate agency, represent himself as an Allstate agent, and used the Allstate phone numbers and Allstate service marks and trade names.

11.     Further, Andrews has kept and failed to return Allstate confidential information after January 11, 2022.

12.     Moreover, Andrews was terminated as an Exclusive Agent due to misappropriation of Allstate customer premium payments.

13.     Therefore, Allstate is rightfully concerned about its confidential information in Andrews' possession and his continued contact with Allstate customers because Andrews has already engaged in conduct that shows a penchant for dishonesty.

14.     Andrews' actions and omissions are a clear violation of the EA Agreement.

15.     Andrews' actions and omissions threaten significant and irreparable harm to Allstate.

16.     As a result, injunctive relief is necessary and appropriate to prevent further injury to Allstate.

17.     Allstate now brings suit against Andrews for his actionable conduct.

18.     In doing so, Allstate requests that this Court enter an order: (1) enjoining Andrews from continuing to operate an Allstate agency; (2) enjoining Andrews from representing himself as an Allstate agent; (3) enjoining Andrews from using the phone numbers used to conduct Allstate business and order him to turn over the Allstate phone numbers to Allstate; (4) enjoining Andrews from using Allstate service marks and trade names; (5) compelling Andrews to return all Allstate property, including all Allstate confidential information, in his custody, possession, or control to Allstate; (6) awarding Allstate compensatory and exemplary damages for Andrews' breaches and other unlawful conduct; and (7) awarding Allstate its reasonable attorneys' fees, costs and expenses as provided for under the EA Agreement, as well as applicable law.

## THE PARTIES AND RELEVANT PERSONS

19.     Allstate is an Illinois corporation with its principal place of business located in Northbrook, Illinois.

20.     Andrews is a citizen of the State of Mississippi and resides in Meridian, Mississippi.

<u>**JURISDICTION AND VENUE**</u>

21.     This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C.

§§ 1331, 1337 & 1338, as Allstate asserts rights and claims under the Lanham Act, 15 U.S.C. §

1125, as well as the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., raising federal

questions.

22.     Allstate's remaining claims fall within the Court's supplemental jurisdiction,

pursuant to 28 U.S.C. § 1367, because the claims are so related to the federal questions that they

form part of the same case or controversy.

23.     Alternatively, this Court has diversity of citizenship jurisdiction, pursuant to 28

U.S.C. § 1332(a), because this action and controversy is between citizens of different states and

the amount in controversy exceeds the value of $75,000, exclusive of interest and costs.

24.     This Court has personal jurisdiction over Andrews because Andrews is a citizen

and resident of the state of Mississippi.

25.     Venue is proper in the United States District Court for the Southern District of

Mississippi, pursuant to 28 U.S.C. § 1391(b), because Andrews resides in this District and a

substantial part of the events giving rise to Allstate's claims occurred in this District.

<u>**BACKGROUND**</u>
<u>**ALLSTATE'S BUSINESS AND HIRING INDEPENDENT EXCLUSIVE AGENTS**</u>

26.     Allstate is one of the nation's leading providers of insurance and financial

products and services to individuals and businesses. Among other things, Allstate provides

automobile insurance, property and casualty insurance, life insurance, and financial services and

products to individuals and businesses.

27.     In addition to providing these products and services (collectively "products") directly, Allstate appoints independent exclusive agents ("EAs"), through its Exclusive Agency Program, to sell Allstate products.

28.     Allstate rigorously screens its EAs in order to ensure that they are qualified to represent and sell Allstate products, have the proper tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate insurance solutions.

29.     EAs, including Andrews, are provided training by Allstate once they become EAs. In that process, they are provided confidential information regarding the products offered by Allstate, as well as business strategies that assist them with developing business. EAs are also provided highly proprietary and confidential information about Allstate's business model and customers in order to assist them in their role as EAs. This includes confidential information that the EAs would not have access to prior to becoming an EA with Allstate.

30.     Allstate expends substantial resources advertising, marketing, and promoting its products. The EAs benefit directly and indirectly from Allstate's advertising, marketing, and promotional efforts, as well as from Allstate's goodwill, reputation, and name recognition.

31.     These efforts and expenditures allow the EAs to develop and cultivate accounts and relationships on behalf of Allstate.

32.     Accordingly, Allstate relies heavily upon repeat business and renewal of policies to maintain its competitive advantage. Maintaining goodwill and a solid business reputation with its customers is a critical component of Allstate's success. Indeed, because Allstate's business is a service business, the relationship that each EA has with Allstate customers is highly dependent on the attention and excellent service given to the customer on an ongoing basis, and the continued trust the customers place in Allstate as a leading provider of such services.

33.     Allstate and its customers entrust Allstate EAs to safeguard and protect their private information, which includes information relating to, among other things, their personal data, date of birth, social security numbers, types of policies, amount of insurance, premium amounts, renewal dates of policies, description and location of assets and property, claims histories, insurance needs, pricing information, and other insurance coverage information, from unauthorized use or disclosure. Access to confidential information regarding Allstate customers was provided to or gained by Andrews because he was an EA for Allstate. Andrews did not have access to confidential information about Allstate customers before entering into his relationship with Allstate.

34.     Allstate protects the information described in Paragraph 33, by, among other things: limiting the disclosure and use of this information to only the EA; educating the EA about the requirement and necessity of keeping this information confidential; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; and, as discussed above, requiring the EA to execute a written agreement that protects against the misuse and improper disclosure of Allstate confidential information.

35.     Consequently, all EAs, under their EA Agreements, and while performing services under the EA Agreement, acknowledge that they will have access to Allstate confidential information; contract not to disclose Allstate confidential information to anyone not authorized to receive it (including the EA's own employees); and confirm that they will not use Allstate confidential information for their own benefit or for any improper purpose, including, but not limited to, the solicitation of customers for another company, agent, or broker.

36.     EAs agree, upon termination of their EA Agreements, to continue treating Allstate confidential information as confidential, to not disclose, either directly or indirectly, Allstate

6

confidential information to any third party, and to immediately return all Allstate confidential information to Allstate.

37.     Hence, the information described in Paragraph 33 is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business. The time, expense, and effort that goes into the development of Allstate confidential and proprietary information is such that the independent development of identical or comparable materials by Allstate competitors would be extraordinarily difficult and expensive.

### ANDREWS ENTERS INTO EA AGREEMENT TO SOLICIT AND SELL ALLSTATE PRODUCTS

38.     After proceeding through Allstate's rigorous screening process, Andrews became an Exclusive Agent on or about December 1, 2018. (*See* EA Agreement, a true and correct copy of which is attached as **Exhibit A**.)

39.     Andrews operated an Exclusive Allstate Agency from December 1, 2018 to January 11, 2022.

40.     In the regular course of its business, Allstate maintains Exclusive Agency Agreements, like the EA Agreement signed and executed by Andrews, in its files and regularly relies on those agreements.

41.     Pursuant to his EA Agreement, Andrews acknowledged that the following information is Allstate "confidential information" and property:

[B]usiness plans of [Allstate]; information regarding the names, addresses, and ages of policyholders of [Allstate]; types of policies; amounts of insurance; premium amounts; the description and location of the insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and

any information concerning any matters affecting or relating to the pursuits of
[Allstate] that is not otherwise lawfully available to the public.

(Ex. A,  ¶ IV(D).)

42.     Andrews contracted under his EA Agreement to maintain the confidentiality of

Allstate confidential information and to return all Allstate confidential information and property

to Allstate when his relationship with Allstate terminated. (Ex. A. ¶¶ IV(B)-(C), XVIII(B).)

43.     Andrews contracted not to use Allstate confidential information for his own

benefit and not to disclose Allstate confidential information to third parties either before or after

his relationship with Allstate ended. (Ex. A. ¶¶ IV(B).)

44.     Further, Andrews' EA Agreement provided for Allstate's for cause termination of

Andrews immediately upon written notice. (Ex. A. ¶¶ XVII(B)(3).)

45.     Upon termination of the EA Agreement, Andrews contracted to (a) not act or

represent himself as an agent or representative of Allstate; (b) immediately return all company

property, including all Allstate confidential information; (c) cease using the Allstate telephone

numbers used to conduct Allstate business; (d) not solicit Allstate customers for one year after

the EA Agreement terminated; (e) not sell competing insurance products from any office or

business site located within one mile of his former Agency location; and (f) cease any and all use

of Allstate service marks and trade names. (Ex. A. ¶ XVIII(A)-(E).)

46.     Andrews recognized that a breach of any of the provisions identified in

Paragraphs IV(A)-(E), IX, XVIII(B)-(D) of the EA Agreement would "cause irreparable damage

to [Allstate's] business and that such damage [is or will be] difficult or impossible to measure."

(Ex. A. ¶¶ IV(F), XVIII(F).)

47.     Consequently, Andrews contracted that if he breached Paragraphs IV(A-E), IX,

XVIII(B) or (D) of the EA Agreement, then "in addition to other rights and remedies," Allstate

"will be immediately entitled to an order granting injunctive relief…without the necessity of posting a bond." (Ex. A.)

48.    Andrews also contracted that if he breached Paragraphs IV(A)-(E), IX, XVIII(B) or (D) of the EA Agreement, then Allstate would be "entitled to an award of reasonable attorneys' fees in the event that [Allstate] is successful in an application for injunctive relief or in an action based upon breach of [one or more of those provisions]."  (Ex. A.)

## ANDREWS BREACHES THE EA AGREEMENT

49.    Under the EA Agreement, Andrews sold Allstate products out of Meridian, Mississippi, from approximately December 1, 2018 to January 11, 2022.

50.    In  September 2021, Allstate opened an investigation into Andrews following complaints from several customers that have provided cash payments to Andrews to pay their insurance premiums and those payments did not credit to the customers' policies.  Following completion of the investigation, it was determined that there was sufficient evidence to support the customers' allegations.

51.    Accordingly, pursuant to Section XVII(B)(3), Andrews' EA Agreement was terminated for cause on January 11, 2022. (*See* January 11, 2022 Termination Letter, a true and correct copy of which is attached as **Exhibit B**.)

52.    As of January 11, 2022, therefore, Andrews was required to return all Allstate confidential information and property to Allstate. (Ex. A. ¶¶ IV(B)-(C), XVIII(B).)

53.    In addition, as of January 11, 2022, Andrews was required to: (1) cease operating the Allstate agency, (2) desist representing himself as an Allstate agent; (3) transfer the Allstate telephone numbers used to conduct Allstate business back to Allstate; and (4) discontinue any and all use of Allstate service marks and trade names. (Ex. A. ¶¶ XVIII(A)-(E).)

54.     Lastly, Andrews is prohibited from soliciting Allstate customers until January 11, 2023. (Ex. A. ¶ XVIII(D).)

55.     Unfortunately, Andrews has refused and continues to refuse, to transfer the Allstate telephone numbers to Allstate.

56.     Despite multiple requests, Andrews has taken the position that the Allstate phone numbers belong to him and refuses to complete any transfer paperwork for the Allstate phone numbers to be transferred to Allstate in accordance with the EA Agreement.

57.     Moreover, despite being advised on January 11, 2022 that Andrews must immediately cease operating his Allstate agency, Andrews continues to operate an insurance agency at the location of his Allstate Exclusive Agency.

58.     By continuing to operate an Allstate agency, Andrew also continues to represent himself as an Allstate agent, and continues to use the Allstate telephone numbers and service marks used by his Allstate Exclusive Agency.

59.     For example, Andrews' Facebook page contains the "Allstate" logo and states that Andrews is still an Allstate EA.  See (https://www.facebook.com/jeff.andrews.505960, last accessed 01-20-2022, true and correct excerpts of which are attached as collective **Exhibit C**.)

60.     Andrews' acts and omissions as pleaded herein constitute false advertising.

61.     Andrews does not have authority to continue to represent himself as an Allstate agent, use Allstate telephone numbers and Allstate service marks and trade names. In fact, he received explicit direction to cease this conduct, as well as return all Allstate property, in his January 11, 2022 termination letter. (*See* Ex. B.)

62.     Further, on information and belief, Andrews has retained Allstate confidential information and property following the termination of his EA Agreement.

63.     Andrews did and does not have the authority to retain Allstate's confidential information after his EA Agreement was terminated.

64.     By retaining the Allstate property, specifically confidential information and telephone numbers, and holding himself out as an Allstate agent, Andrews can solicit unknowing customers who contact Andrews's former Allstate agency number and could continue his illegal activity of collecting money from them to pay their Allstate premiums and then steal that money harming both the customers and Allstate.

65.     Andrews' continued possession of Allstate confidential information and property poses a substantial risk because he could use such information and property to solicit customers on behalf of an Allstate competitor.

66.     Andrews' failure to immediately return all Allstate property in his possession, custody, and/or control, including confidential information and the Allstate phone numbers, and his failure to desist operating his former Allstate agency, representing himself as an Allstate agent, using Allstate telephone numbers, and using Allstate service marks and trade names violates the terms of Andrews' EA Agreement.

67.     Consequently, Andrews is knowing and intentionally ignoring his duties and obligations to Allstate thereby necessitating the filing of the instant lawsuit and request for injunctive relief.

<u>IRREPARABLE HARM TO ALLSTATE</u>

68.     Andrews is harming Allstate's legitimate business interest by illegally retaining Allstate confidential information and property.

69.     Moreover, Allstate confidential information and goodwill are at risk because Andrews is actively using Allstate confidential information while continuing to represent himself

as an Allstate agent, using Allstate telephone numbers and Allstate service marks and trade names.

70.     By failing to immediately return Allstate confidential information and property, Andrews has harmed, and continues to harm, Allstate's legitimate business interests. Andrews is also harming Allstate's legitimate business interests by illegally using Allstate confidential information in continuing to operate his former Allstate agency.

71.     As a former agent, who was terminated for cause for misappropriating customer premiums, Andrews poses an immediate and substantial risk to Allstate by retaining its confidential information and continuing to represent himself as an Allstate agent due to his penchant for dishonesty.

72.     Simply put, Allstate customers can call the Allstate telephone number or stop by Andrews' former Allstate agency location, believing that they are reaching out to an Allstate agent.  Instead, the Allstate customer is actually reaching out to a terminated former Allstate agent and potential Allstate competitor (Andrews), and the competitor can then solicit the Allstate customer to leave Allstate or continue to defraud Allstate customers by misappropriating payments.

73.     Injury to Allstate is therefore both probable and imminent because Andrews clearly intends to continue violating his EA Agreement, improperly retain Allstate confidential information, and continue holding himself out as an Allstate agent, using Allstate's telephone numbers, service marks and trade names.

74.     Accordingly, Allstate is suffering irreparable harm and injunctive relief is necessary and appropriate to prevent further damage to Allstate.

## COUNT I

### *Breach of Contract*

75.     Allstate repeats and realleges the preceding averments of this Complaint.

76.     On December 1, 2018, Andrews entered into his EA Agreement with Allstate. (*See* Ex. A.)

77.     The EA Agreement is a valid and enforceable contract.

78.     Under the EA Agreement, Andrews agreed to return all Allstate confidential information to Allstate when his EA Agreement was terminated. (Ex. A ¶ XVIII(B).)

79.     Andrews specifically recognized that the following information is Allstate "confidential information" and property:

> [B]usiness plans of [Allstate]; information regarding the names, addresses, and ages of policyholders of [Allstate]; types of policies; amounts of insurance; premium amounts; the description and location of the insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public.

(Ex. A, ¶ IV(D).)

80.     Allstate has performed all of the duties and obligations it owes Andrews under the EA Agreement.

81.     Allstate has demanded that Andrews immediately return all property belonging to Allstate as required by the EA Agreement. (*See* Ex. B.)

82.     However, Andrews has failed to return Allstate's property.

83.     Instead, upon information and belief, Andrews has continued to possess and use Allstate confidential information following the termination of the EA Agreement.

84.      Andrews has no right to possess or use Allstate confidential information following the termination of the EA Agreement.

13

85.     In addition, by improperly continuing to operate his former Allstate agency, Andrews is continuing to represent himself as an Allstate agent, continuing to use the Allstate telephone numbers and Allstate service marks and trade names.

86.     Under the EA Agreement, after termination of the EA Agreement, Andrews is prohibited from representing himself as an Allstate agent, using Allstate telephone numbers or Allstate service marks and trade names. (Ex. A. ¶¶ XVIII(A)-(E).)

87.     Accordingly, Andrews is in breach of the EA Agreement.

88.     Andrews' breaches of the EA Agreement have damaged Allstate's goodwill, reputation, and legitimate business interests.

89.     In addition, Allstate needs its confidential information and property, as well as its Allstate telephone numbers, in order to protect and maintain the relationships it has developed with its customers over many years, and maintain the confidentiality of its confidential information.

90.     Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Andrews in a manner that is not fully compensable by monetary damages.  Injunctive relief is therefore necessary and appropriate in order to prevent further damage to Allstate.

91.     Hence, Allstate requests that this Court grant injunctive relief against Andrews that prohibits Andrews from (a) using, possessing, or having access to any Allstate confidential information; (b) disclosing confidential information to anyone not authorized to receive the information; (c) continuing to operate an insurance agency at his former Allstate Exclusive Agency location and representing himself as affiliated with Allstate; (d) continuing to use Allstate telephone numbers and Allstate service marks.

14

92.     Allstate also requests that this Court order Andrews to immediately return to

Allstate confidential information and property still in his possession, custody or control to

Allstate and to transfer the Allstate telephone numbers to Allstate.

93.     Finally, Allstate is entitled to recover the attorneys' fees and expenses it incurs as

a result of Andrews' breaches of the EA Agreement.

### **COUNT II**
### *Lanham Act*
### *False Advertising*

94.     Allstate hereby incorporates by reference the preceding averments of this

Complaint.

95.     15 U.S.C. § 1125 provides in part that:

(a) Civil action

**(1)** Any person who, on or in connection with any goods or services, or any
container for goods, uses in commerce any word, term, name, symbol, or device,
or any combination thereof, or any false designation of origin, false or misleading
description of fact, or false or misleading representation of fact, which--

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the
affiliation, connection, or association of such person with another person, or as to
the origin, sponsorship, or approval of his or her goods, services, or commercial
activities by another person, or

**(B)** in commercial advertising or promotion, misrepresents the nature,
characteristics, qualities, or geographic origin of his or her or another person's
goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is

likely to be damaged by such act.

*Id.*

96.     Andrews has made a false representation(s) as to the identity or sponsorship of his

business which are intended to create consumer confusion between him, his business, and that of

Allstate.

97.     Andrews' actions are false, deceptive and likely to engender marketplace confusion.

98.     Andrews' actions are in violation of the federal Lanham Act.

99.     As a result, Andrews is liable to Allstate and Allstate is entitled to the equitable and legal relief requested herein.

### COUNT III
*Misappropriation of Trade Secrets in Violation of the*
*Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.*

100.    Allstate repeats and realleges the preceding averments of this Complaint.

101.    During the course of his relationship with Allstate, Andrews was exposed to a substantial amount of Allstate confidential information, including the confidential information identified in Paragraph 33.

102.    For instance, he had access to: Allstate business plans; information regarding the names, addresses, and ages of policyholders or prospective policyholders of Allstate; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings; policyholder information that is subject to privacy law; and claim information.

103.    This information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain an advantage in the highly competitive insurance business.

104.    Allstate confidential information is considered a "trade secret" under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq., because the information is not generally known outside of Allstate's business, the information is not generally known by employees and others involved in Allstate's business, Allstate has taken reasonable measures to guard the secrecy of

the information, the information is of great value to Allstate and its competitors, Allstate invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because Allstate continuously uses the information in its business.

105.    Upon termination of his EA Agreement, Andrews was required to return Allstate confidential information to Allstate but has not complied with Allstate's request to do so and, upon information and belief, still retains certain Allstate confidential information in his possession and/or control.

106.    Unless restrained, Andrews will use, divulge and/or otherwise misappropriate Allstate confidential information.

107.    Andrews' continued possession and use of Allstate confidential information demonstrate that Andrews has no intention of complying with the terms of the EA Agreement or the law.

108.    Naturally then, Allstate requests an order enjoining Andrews from using any Allstate confidential information and from disclosing Allstate confidential information to anyone not authorized to receive the confidential information.

109.    Allstate also requests an order requiring Andrews to return any and all Allstate confidential information still in his possession and/or control to Allstate and awarding Allstate compensatory damages arising from Andrews' illegal retention and/or use of Allstate confidential information.

110.    Finally, Andrews' misappropriation of Allstate confidential information has been willful and malicious, and Allstate has incurred significant damages as a result of Andrews' misappropriation of Allstate confidential information.

111.    Andrews' actions have damaged Allstate's goodwill, reputation, and legitimate business interests.

112.    Allstate is therefore entitled to compensatory and exemplary damages in an amount to be proven at trial, as well as reasonable attorneys' fees.

### PRAYER AND AD DAMNUM

WHEREFORE, Plaintiff Allstate Insurance Company respectfully requests that this Court:

1.    Enter a temporary, preliminary and permanent injunction enjoining and restraining Andrews, and his agents, representatives, servants, employees, and all those acting in concert or participation with him, from continuing to operate his former Allstate agency;

2.    Enter a temporary, preliminary and permanent injunction enjoining and restraining Andrews from continuing to represent himself as an Allstate agent;

3.    Enter a temporary, preliminary and permanent injunction enjoining and restraining Andrews from using in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, goods or services, that involve Allstate;

4.    Enter a temporary, preliminary and permanent injunction enjoining and restraining Andrews, and his agents, representatives, servants, employees, and all those acting in concert or participation with him, from using Allstate telephone numbers;

5.    Enter a temporary, preliminary and permanent injunction enjoining and restraining Andrews, and his agents, representatives, servants, employees, and all those acting in concert or participation with him, from using Allstate service marks and trade names;

6.      Enter a temporary, preliminary and permanent injunction requiring Andrews to return all Allstate confidential information and property in his possession, custody, or control to Allstate;

7.      Enter a temporary, preliminary and permanent injunction requiring Andrews to transfer all Allstate telephone numbers used by Andrews while affiliated with Allstate to Allstate;

8.      Enter judgment against Andrews for compensatory damages in an amount to be determined at trial;

9.      Enter judgment against Andrews for exemplary damages in an amount to be determined at trial;

10.     Award Allstate the costs and expenses, including its reasonable attorneys' fees, Allstate incurs as a result of Andrews' breaches of the EA Agreement and Andrews' other unlawful acts and omissions; and

11.     Award Allstate such other relief as the Court may deem just and proper.

This, the 21st day of January, 2022

Respectfully submitted,

/s/ *Phillip S. Sykes*
Phillip S. Sykes (MB # 10126)
Caroline B. Smith (MB # 105501)

***Attorneys for Plaintiff Allstate Insurance Company***

OF COUNSEL:

BUTLER SNOW LLP
200 Renaissance at Colony Park, Suite 1400
1020 Highland Colony Parkway (39157)
Post Office Box 6010
Ridgeland, MS 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
 (E) phillip.sykes@butlersnow.com
(E) caroline.smith@butlersnow.com

COUNTY OF SHELBY

STATE OF TENNESSEE

**DECLARATION UNDER PENALTY OF PERJURY**
**(PURSUANT TO 28 U.S.C. § 1746)**
**OF JESSICA DAWN CANNON**

Jessica Cannon deposes and says:

1.      My name is Jessica Dawn Cannon.  I am over twenty-one years of age and of

sound mind.  I am competent to testify about all of the matters set out in this Declaration Under

Penalty of Perjury.

2.      I am an employee of Allstate Insurance Company ("Allstate").  I hold the title of

District Sales Leader.

3.      The following statements are based upon my personal knowledge and/or upon my

review of certain business records and associated records and the information they contain.  Any

documents reviewed consist of reports, records or data compilations, made at or near the time by,

or from information transmitted by, persons with knowledge, and are kept in the normal course

of Allstate's business.  It is a regularly conducted business activity of Allstate to keep such

business records.  Nothing in this Declaration waives or is intended to waive the attorney-client

privilege, Rule 26(b)(3) protection or any other applicable privilege or protection against

discovery or disclosure.

4.      I executed (administered) the termination letter at 9:30 a.m. CST on January 11,

2022 via a Zoom call with Jeffrey Regan Andrews ("Andrews"). Windle "Darnell" Scott, Sales

Market Leader, joined me on the call.

5.      After I had administered the letter (I read the letter in its entirety to Andrews),

Cathy Arbelo from our National Agency Establishment Team (NAET) joined the Zoom call to

walk Andrews through the off-boarding process, including the process for forwarding phones,

and provided the necessary phone form for the number to be turned over to Allstate. I dropped off the Zoom call during the process; Darnell Scott remained on the line.

6.      I received customer complaints directly concerning Andrews, as well as through Darnel Scott, who received complaints from other agents. Since Allstate's termination of Andrews as an agent, I have been involved in numerous conference calls and emails addressing issues that have been uncovered since the termination took place.

7.      Brenda Trusch, also from the NAET, and Cathy Arbelo have followed up with Andrews regarding transferring the phone lines. They received an email from Andrews stating that he had the numbers before he came to Allstate, as well as an email stating he would comply. As of today, he has still not complied by transferring the phone numbers.

8.      On more than one occasion after January 11, 2022, I have called the office in which Andrews formerly worked as an Allstate agent, and the person(s) answering the phone answered those calls with the salutation, "Allstate Agency."

9.      Further, the factual matters pleaded in the above Verified Complaint for Injunctive and Other Relief are true and correct to the best of my knowledge.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 21st day of January, 2022.

By: s/ _____
        Jessica Dawn Cannon

22